JOHN T. O'CONNELL, Esq.  (S.B.N. 10715)
O'CONNELL AND ASSOCIATES
1003 Bishop Street, #2700
Honolulu, HI, 96813
E-mail: oconnell@jtoclaw.com
(808) 800-0050

## UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAI'I

| | |
|---|---|
| WILLIAM McMEIN EHART, JR., Individually and as Personal Representative of the Estate of MAUREEN ANNE EHART, Deceased, <br><br> Plaintiff, <br><br> vs. <br><br> LAHAINA DIVERS INC., CORY DAM, KAIT IRENE, and JULES CRICCHIO, <br><br> Defendants. | No. <br><br> **COMPLAINT FOR WRONGFUL-DEATH, SURVIVAL, PERSONAL-INJURY, AND PUNITIVE DAMAGES** |

COMES NOW Plaintiff WILLIAM McMEIN EHART, JR., Individually and as Personal Representative of the Estate of MAUREEN ANNE EHART, Deceased, who herewith complains against Defendants, and each of them, and for Causes of Action alleges as follows:

## PRELIMINARY ALLEGATIONS
*Subject Matter Jurisdiction and Venue*

1.      As is hereinafter more fully set forth, the incident which gave rise to this lawsuit satisfies the requirements for admiralty tort jurisdiction in that:

a.      It occurred upon the navigable waters of the Pacific Ocean, within the territorial waters of the State of Hawai'i, less than 100 yards from the walls of Molokini Crater;

b.      It had an actual and potential impact on maritime commerce, and;

c.      One or more of the Defendants was engaged in activity substantially related to traditional maritime activity, and such activity was a proximate cause of the incident.

This Court therefore has subject matter jurisdiction, in admiralty, under 28 U.S.C. § 1333 and Fed.R.Civ.P. 9(h).

2.      Venue is properly laid in this Court under 28 U.S.C. § 1391(b)(2) in that the acts and omissions complained of herein occurred within the Federal Judicial District of Hawai'i.

*The Parties and Personal Jurisdiction*

3.      Plaintiff WILLIAM McMEIN EHART, JR. ("Plaintiff") is a citizen and resident of the State of California.  He is also:

a.      The "spouse" of MAUREEN ANNE EHART, Deceased ("DECEDENT") as that term is used in 46 U.S.C. §30302;

b.      The father of DECEDENT's three children, ANDREA CHRISTINE EHART FIERI, HAYLEY ANNE EHART, and KIMBERLY ALLISON EHART, and;

c.      The Executor and duly designated "personal representative" of DECEDEDNT's Estate as that phrased is used in 46 U.S.C. §30302.

At all times material hereto, Plaintiff was likewise a "passenger for hire" aboard the dive vessel *Dauntless* as that phrase is used in 33 C.F.R. § 101.105.  He brings this action both individually, on his own behalf, and in his capacity as DECEDENT's personal representative.

4.      ANDREA CHRISTINE EHART FIERI was born in August of 1983 and is DECEDENT's "child" as that term is used in 46 U.S.C. §30302.

5.      HAYLEY ANNE EHART was born in May of 1986 and is DECEDENT's "child" as that term is used in 46 U.S.C. §30302.

6.      KIMBERLY ALLISON EHART was born in November of 1987 and is DECEDENT's "child" as that term is used in 46 U.S.C. §30302.

7.      DECEDENT was born in October of 1953.  At all times material hereto, she was:

---

a.      A citizen and resident of the State of California;

b.      A "non-seafarer," as that term is used in used in *Yamaha Motor Corp. v. Calhoun,* 516 U.S. 199 (1996);

c.      And a "passenger for hire" aboard the dive vessel *Dauntless* as that phrase is used in in 33 CFR § 101.105, as depicted below:



8.      At all times material hereto, Defendant LAHAINA DIVERS, INC. was, and still is, a corporation organized and existing under the laws of the State of Hawaii, doing business in that State as a dive charterer, a dive-tour operator, and a "PADI Five-Star Dive Center," and maintaining its principal place of business in Lahaina, Maui.

9.      Defendant CORY DAM is currently a citizen and resident of the State

of Hawai'i. At all times material hereto, said Defendant was the master and person in charge of the dive vessel *Dauntless.*

10.     Defendant KAIT IRENE ("IRENE") is currently a citizen and resident of the State of Hawai'i.  At all times material hereto, said Defendant was a PADI-certified open-water-scuba instructor, a member of the crew of the dive vessel Dauntless, and an employee of Defendant LAHAINA DIVERS, INC.

11.     Defendant JULES CRICCHIO ("CRICCHIO") is currently a citizen and resident of the State of Hawai'i.  At all times material hereto, said Defendant was a PADI-certified open-water-scuba instructor, a member of the crew of the dive boat Dauntless, and an employee of Defendant LAHAINA DIVERS, INC.

12.     At all times material hereto, Defendant LAHAINA DIVERS, INC. owned, manned, maintained, equipped, controlled, and operated the dive boat Dauntless as a "small passenger vessel" within the meaning of 46 C.F.R.§ 175.110(a).

13.     At all times material hereto, the dive boat *Dauntless* was:

a.     Subject to annual inspection and certification by U.S. Coast Guard Sector Honolulu under 46 C.F.R. § 176.100(a), and;

b.     Bound by the Conditions of Operation set forth in her Certificate of Inspection.

14.     At all times material hereto, the *Dauntless* was manned by a crew of three that included Defendant CORY DAM, Defendant IRENE, and Defendant CRICCHIO.

## THE OPERATIVE FACTS

15.     Shortly after 0700, on the morning of Tuesday, September 14, 2021, in consideration for a fare of $391.47, Plaintiff and DECEDENT departed Lahaina Harbor along with fourteen other paying passengers aboard the *Dauntless*, under the care of the three crew members identified in Paragraph 14 hereinabove, on a commercial voyage "between ports of the United States" as that phrase is used in 46 U.S.C. § 30509.

16.     Said voyage was planned, organized, approved, and conducted by Defendants, and each of them, as a scuba-diving and snorkeling excursion at the anchorage in Molokini Crater, a crescent-shaped islet that sits in the territorial waters of the State of Hawai'i off the southeast coast of Maui.

17.     After the *Dauntless* tied up to a mooring buoy on the east side of the Crater, near Taco Flats and Middle Reef, Defendants, and each of them permitted Plaintiff, DECEDENT, and the vessel's other passengers to disembark for their respective scuba-diving and snorkeling activities.  Defendant IRENE left the vessel and led one group of passengers on a forty-minute scuba tour along the Crater's

submerged floor, Defendant CRICCHIO went over the side and led a second group of passengers on a similar scuba tour, and Defendant CORY DAM remained alone aboard the *Dauntless* to, among other things:

    a.    Maintain an anchor watch;

    b.    Serve as a topside lookout and maintain a bubble watch;

    c.    Monitor the radio, the currents, and the weather;

    d.    Supervise the passengers' snorkeling activities;

    e.    Act as a lifeguard;

    f.    Recall the divers and snorkelers if necessary;

    g.    And unmoor and get the vessel underway by himself should the situation require it.

18.    After the scuba divers began their excursions, DECEDENT and two other passengers were permitted to go snorkeling in the waters of the Crater without any paddle boards, life jackets, personal floatation devices, clearly communicated boundaries, or in-water supervisors.

19.    Although the winds, waves, and currents inside the Crater increased after the scuba-diving passengers and Defendants IRENE and CRICCHIO disembarked for their scuba tours, Defendant CORY DAM did not recall the divers or the snorkelers and allowed DECEDENT to continue snorkeling alone even after

the other snorkelers returned to the *Dauntless*.

20.     Preoccupied by his other duties, Defendant CORY DAM thereafter lost track of DECEDENT and permitted her to drift away unsupervised and unseen. When said Defendant discovered that he could no longer see DECEDENT, he neither recalled the scuba divers, reported a missing passenger to the Coast Guard or local authorities on Channel 16, nor initiated an immediate in-water search but instead allowed Defendant IRENE, Defendant CRICCHIO, Plaintiff, and the other scuba diving passengers to continue their excursion.  By the time Plaintiff and all the other scuba divers finally completed their dives, finished their decompression stops, and re-boarded the *Dauntless,* DECEDENT had been missing for an unreasonable period of time.

21.     Although Molokini Crater is a protected anchorage where vessels can disembark and reembark passengers at more than two dozen permanent moorings, it is almost a half-mile wide and opens directly onto the Alalakeiki Channel.  It has a surface area of some 23 acres and its current-swept waters run as deep as 110 deep before dropping off towards abyssal depths.  Instead of unmooring the *Dauntless,* getting underway, and commencing an immediate search of the Crater just as soon as all the scuba divers were back aboard, Defendant CORY DAM kept his vessel fast to the buoy for another thirty minutes or more and directed Defendants IRENE

and CRICCHIO to shed their dive gear and conduct a swim search of the waters inshore near the Crater Wall.

22.    Defendants IRENE and CRICCHIO had no paddle boards or other devices to carry them, buoy them, or give them a better vantage point from which to search the Crater for their lost passenger. Nor were they able to communicate effectively with *Dauntless* or the other vessels in the Crater during their search. Their swim searches were thus poorly planned, improperly equipped, and ultimately unsuccessful.

23.    When the ineffective swim searches proved unsuccessful, Defendant CORY DAM finally and belatedly called for assistance from the Coast Guard and local authorities on Channel 16.   The Coast Guard and Maui County Emergency Services responded to his call immediately and aggressively and, over the next three days, conducted 53 carefully coordinated grid searches of 747 square miles encompassing Molokini Crater and the surrounding ocean waters with divers, ground teams, helicopters, fixed-wing aircraft, small boats, and Coast Guard cutters in search grids depicted in part below:



24.     Despite all those thorough searches, DECEDENT was never found.

25.     After returning from his dive and discovering that his wife was missing, Plaintiff could do no more than watch and wait helplessly while first the DEFENDANTS and then the Coast Guard and Maui County Emergency Services searched without success for his wife of forty-two years.

## FIRST CAUSE OF ACTION
(*Wrongful Death on account of Gross Negligence*)

26.     Plaintiff herewith refers to, and by that reference incorporates as though

---

fully set forth herein, each and every allegation set forth in paragraphs 1 through 25 hereinabove.

27.     As hereinabove and hereinafter more fully appears, this Cause of Action arises under *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375 (1970), *Sea-Land Services v. Gaudet,* 414 U.S. 573 (1974), *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811 (2001), and the General Maritime Law of the United States, as supplemented by the Law of the State of Hawaii under *Yamaha Motor Corp. v. Calhoun,* 516 U.S. 199 (1996).

28.     When Defendants agreed to take Plaintiff and DECEDENT on a scuba-diving and snorkeling excursion to Molokini, and before anyone had even embarked on Defendants vessel, much less gone over the side of that vessel to snorkel or scuba dive, all of those Defendants, and each of them, assumed a duty to provide, among other things:

    a.      A vessel that was manned, equipped, and operated in accordance with the requirements of its Certificate of Inspection and in compliance with 46 C.F.R. Subchapter T;

    b.      Safe and suitable snorkeling, scuba-diving, passenger-safety, and rescue procedures;

    c.      Crew members, lifeguards, dive masters, open water scuba instructors,

and snorkeling supervisors who were properly trained, certified, and equipped for their respective jobs;

d.      A safe, suitable, and properly supervised time and place for the scuba-diving and snorkeling excursions that Plaintiff and DECEDENT had booked;

e.      And a timely and effective rescue to any passenger whom they knew or should have known to be in peril.

29.     On and before September 14, 2021, Defendant LAHAINA DIVER, INC., acting by and through its managerial employees, and Defendant CORY DAM, acting individually, and each of them, were guilty of gross negligence, recklessness, willful and wanton indifference, or conduct even more deplorable, in that, among other things:

a.      They violated a manifest legal duty and failed to use even slight care to man, equip, equip, and operate the dive boat *Dauntless* in accordance with the requirements of its Certificate of Inspection;

b.      They violated a manifest legal duty and failed to use even slight care to comply with the provisions of 46 C.F.R. Subchapter T;

c.      They violated a manifest legal duty and failed to use even slight care to adopt, implement, or enforce a small-passenger-vessel Safety Management System;

d.      They failed to use even slight care to comply with U.S. Coast Guard Sector Honolulu's Best Practices for Passenger Safety on Small Passenger Vessels Involved in Water Sports;

e.      They failed to use even slight care to comply with PADI Retailer Association Membership Standards, PADI safety rules, PADI IRRA standards, and/or PADI snorkeling supervision requirements;

f.      They failed to use even slight care to adopt, implement, or enforce safe and suitable snorkeling, scuba-diving, and rescue procedures;

g.      They failed to use even slight care to provide *Dauntless* with a master, crew members, lifeguards, dive masters, open-water scuba instructors, and/or snorkeling supervisors who were properly trained, certified, and equipped for their respective jobs;

h.      They failed to use even slight care to supervise DECEDENT during her snorkeling excursion;

i.      They failed to use even slight care to initiate a timely and effective search for DECEDENT;

j.      They failed to use even slight care to radio for timely assistance from the U.S. Coast Guard and/or local authorities over Channel 16;

k.      And, in the end, they failed utterly and inevitably to rescue

DECEDENT after recklessly and wantonly placing her in peril.

30.    As a direct, proximate, and legal result of the hereinabove alleged delicts of Defendants, and each of them, DECEDENT was lost at sea where she ultimately and inevitably died alone either by drowning or hypothermia as hereinabove and hereafter more fully appears.

31.    Decedent was only 67 years old on the date of her death.  Prior to her death, she was an adult person in good physical and mental health and condition and was a loving and supportive wife and mother.  As a direct, proximate, and legal result of DECEDENT's death, her husband WILLIAM EHART and their daughters ANDREA CHRISTINE EHART FIERI, HALEY ANNE EHART, and KIMBERLY ALLISON EHART, and each of them, have suffered and will continue to suffer the permanent loss of DECEDENT's care, comfort, services, guidance, advice, example, nurture, support, and inheritance all to their pecuniary damage in an amount to be determined at the time of trial.

32.    As a further direct, proximate, and legal result of DECEDENT's death, DECEDENT's husband WILLIAM EHART and their daughters ANDREA CHRISTINE EHART FIERI, HALEY ANNE EHART, and KIMBERLY ALLISON EHART, and each of them, have suffered and will continue to suffer the permanent loss of DECEDENT's love, affection, devotion, society, care, and

consortium all to their non-pecuniary damage in an amount to be determined at the time of trial.

33.     As a further direct, proximate, and legal result of DECEDENT's death, her husband WILLIAM EHART and their daughters ANDREA CHRISTINE EHART FIERI, HALEY ANNE EHART, and KIMBERLY ALLISON EHART, and each of them, have suffered and will continue to suffer the grief and distress over Decedent's untimely death, for which they are entitled to compensation under Chapter 663, HRS, and other applicable law, in an amount to be determined at the time of trial.

34.     In performing the acts and committing the omissions alleged herein, Defendants LAHAINA DIVERS, INC. and CORY DAM, and each of them, were motivated in whole or in party by a desire for financial gain, acted outrageously, and were guilty of gross negligence, recklessness, willful and wanton indifference for the safety of others, or behavior even more deplorable, justifying an award of punitive damages in an amount to be determined at the time of trial herein.

WHEREFORE, Plaintiff prays judgement against Defendants LAHAINA DIVERS, INC., and CORY DAM, and each of them, for gross negligence or conduct even more deplorable as is hereinafter more fully set forth.

## SECOND CAUSE OF ACTION
(*Wrongful Death on account of Simple Negligence*)

35.     Plaintiff herewith refers to and by that reference incorporates, as though fully set forth herein, each and every allegation averred in their First Cause of Action.

36.     In performing the acts and committing the omissions herein alleged, Defendants, and each of them, failed to exercise reasonable or ordinary care.

37.     Defendants IRENE and CRICCHIO, and each of them, were further negligent in that:

a.)     They failed to comply with the PADI Membership Standards;

b.)     They failed to conduct a timely and effective rescue of DECEDENT.

WHEREFORE, Plaintiffs and each of them pray judgement against all the Defendants, and each of them, for simple negligence as is hereinafter more fully set forth.

## THIRD CAUSE OF ACTION
(*Survival Damages on account of Gross Negligence*)

38.     Plaintiff herewith refers to and by that reference incorporates, as though fully set forth herein, each and every allegation averred in their First Cause of Action.

39.     As hereinabove and hereinafter more fully appears, this Cause of

Action arises under *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970), *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 211 (1996), *Davis v. Bender Shipbuilding and Repair Co.*, 27 F.3d 426, 430 (9th Cir. 1994), *Koirala v. Thai Airways International, Ltd.*, 126 F.3d 1205, 1212 (9th Cir. 1997), and the General Maritime Law of the United States, as supplemented by the Law of the State of Hawaii under *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996).

40.    Just as the within cause of action arose in her favor, DECEDENT, who would have been the Plaintiff in this action had he lived, died as is hereinabove more fully alleged.

41.    As a direct and proximate result of the hereinabove alleged delicts of the Defendants, and each of them, DECEDENT was placed in great fear for her life and physical well-being, and consciously suffered extreme, severe, and relentless mental anguish and physical pain, and continued to suffer such pain and anguish for a substantial period of time until she eventually and inevitably died either by drowning or hypothermia.

42.    The drowning process is an agonizing and drawn-out continuum which involves fear, dread, involuntary apnea, laryngospasm, the inhalation of seawater, asphyxia, cardiac arrhythmia, and eventual cardiac arrest.

43.    Death by hypothermia is also an agonizing and drawn-out continuum

which begins when a sufferer's core temperature drops below 95 degrees, triggering a spiral decline of physical and mental ability that leads to organ failure, cardiac arrhythmia, and eventual cardiac arrest

44.    DECEDENT inevitably suffered one, the other, or both of the drawn-out, agonizing processes described in Paragraphs 42 and 43, all to her general damage in an amount to be determined at the time of trial.

45.    DECEDENT inevitably suffered one, the other, or both of the drawn-out, agonizing processes described in Paragraphs 42 and 43, all to her general damage in an amount to be determined at the time of trial.

46.    At the time of her death, Decedent had a statistical life expectancy of more than 18 years. As a further direct and proximate result of the hereinabove alleged delicts of the Defendants, and each of them, Decedent suffered a hedonic loss of her "enjoyment of life," as that phrase is used in HRS § 663-8.5, all to her further general damage in an amount to be determined at the time of trial.

WHEREFORE, Plaintiffs and each of them pray judgment against Defendants LAHAINA DIVERS, INC. and CORY DAM, and each of them, for gross negligence or conduct even more deplorable as is hereinafter more fully set forth.

## FOURTH CAUSE OF ACTION
### (*Survival Damages on Account of Simple Negligence*)

47.     Plaintiffs herewith refers to and by that reference incorporates, as though fully set forth herein, each and every allegation averred in their Second Cause of Action, and in Paragraphs 38-46 of her Third Cause of Action.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for simple negligence, as hereinafter more fully appears.

## FIFTH CAUSE OF ACTION
### (*Reckless Infliction of Emotional Distress*)

48.     Plaintiff herewith refers to and by that reference incorporates, as though fully set forth herein, each and every allegation averred in Paragraphs 1 through 26, 28-34 hereinabove.

49.     As hereinabove and hereinafter more fully appears, this Cause of Action arises under *Plaisance v. Texaco, Inc*., 937 F.2d 1004, 1009 (5th Cir. 1991); *Nelsen v. Research Corp. of the Univ. of Hawaii*, 805 F.Supp. 837, 849 (D.Haw. 1992); *Fawkner v. Atlantis Submarines, Ltd*., 135 F.Supp.2d 1127 (D.Haw. 2001), and the General Maritime Law of the United States, as supplemented by *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758 (1974), and otherwise by the Law of the State of Hawaii, under *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996).

50.     At all times material hereto, Plaintiff was present and in the zone of

danger, either diving in the waters of Molokini Crater or aboard the dive boat Dauntless.

51.    As a further direct, proximate, and legal result of the hereinabove alleged delicts of Defendants, and each of them, Plaintiff was not only a horrified witnesses to the events that led to the death of his wife, but was himself placed at risk of harm, which events and injuries have naturally, foreseeably, demonstrably, and inevitably caused, and will continue to cause him serious and permanent, mental, emotional, and nervous pain, distress, and suffering, all to his general damage in an amount to be determined by the time of trial.

WHEREFORE, Plaintiff prays judgment against Defendants LAHAINA DIVERS, INC., and CORY DAM, and each of them, for gross negligence or conduct even, and as is hereinafter more fully set forth.

## SIXTH CAUSE OF ACTION
(*Negligent Infliction of Emotional Distress*)

52.    Plaintiff herewith refers to and by that reference incorporates, as though fully set forth herein, each and every allegation averred in Paragraphs 1 through 26, 28-33, and 49-51 hereinabove.

## PRAYER

WHEREFORE, Plaintiffs, and each of them, pray judgment against

---

Defendants, and each of them, as follows:

A.     That judgment be entered in Plaintiffs' favor and against all the Defendants, and each of them, awarding:

1.     Pecuniary damages, pursuant to the allegations of Paragraphs 29 hereinabove, for the wrongful death of Decedent MAUREEN ANNE EHART;

2.     Non-pecuniary damages, pursuant to the allegations of Paragraph 30 and 31 hereinabove for Decedent's wrongful death;

3.     Survival damages pursuant to the allegations of Paragraphs 39-42 hereinabove, for Decedent's conscious pre-death pain and suffering;

4.     Survival damages pursuant to the allegations of Paragraph 43 for Decedent's hedonic loss of the enjoyment of life;

5.     General damages pursuant to the allegations of Paragraph 48, for Plaintiff's physical, mental, emotional, and nervous, pain, suffering, and distress;

6.     Prejudgment interest;

7.     Costs of suit;

8.     And such other and further relief as the Court deems just and proper.

B.    That judgment further be entered in their favor, against Defendants LAHAINA DIVERS, INC. and CORY DAM, and each of them, for punitive damages pursuant to the allegations of Paragraph 32 hereinabove.

Dated: December 1,  2021          O'CONNELL AND ASSOCIATES
Attorneys for Plaintiff

By:   /s/ John T. O'Connell
        JOHN T. O'CONNELL